744 P.2d 37

**STATE of Arizona, Petitioner,**

v.

**Bradley Howard STEVENS, Respondent.**

**No. 1 CA–CR 11185–PR.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 8, 1987.

Thomas E. Collins, Maricopa County Atty. by H. Allen Gerhardt, Deputy County Atty., Phoenix, for petitioner.

Ross P. Lee, Maricopa County Public Defender by Charles R. Krull, Deputy Public Defender, Phoenix, for respondent.

## OPINION

FIDEL, Judge.

The trial judge set aside a plea of guilty entered by respondent Bradley Howard Stevens (defendant). The defendant had brought an error in the plea proceedings to the court's attention by petition for post conviction relief. The state now petitions for review and argues that defendant's plea was wrongly set aside. We disagree and deny relief.

Defendant pled guilty to armed robbery, a class 2 felony, committed while on parole, in violation of A.R.S. § 13–604.01(B) (now renumbered as § 13–604.02(B)). The state agreed in return to dismiss an additional charge of armed robbery and to withdraw allegations that the defendant was a dangerous and repetitive offender. A.R.S. § 13–604. The parties agreed to a stipulated sentence of nine years "flat," to be served consecutively to any sentence reinstated for parole violation.

Before committing the present offense of armed robbery, defendant had served consecutive sentences for two previous crimes. When he became eligible for parole on the first of these two sentences, the Arizona Board of Pardons and Paroles granted parole, but held his parole time in abeyance while defendant served the second. After completing his second sentence, defendant was released and began serving the previously tolled parole. Defendant committed

the present offense of armed robbery on June 27, 1983, during the period of this parole. Because the offense was dangerous and committed while the defendant was ostensibly on parole, the state sought sentence enhancement pursuant to former A.R.S. § 13–604.01(A) (now renumbered as § 13–604.02(A)). Had defendant been convicted and found subject to § 13–604.01(A), he would have necessarily served 25 years to life, without eligibility for release until he had served at least 25 calendar years. *Id.* The prospect of such sentence enhancement was undoubtedly a factor in defendant's plea.

In 1984, after the trial court had accepted defendant's plea and imposed sentence, this court held in an unrelated case that the parole board could not validly suspend parole on a first sentence pending an offender's completion of a second, consecutive sentence. *See Cawley v. Arizona Board of Pardons and Paroles,* 145 Ariz. 387, 701 P.2d 1195 (App.1984), *aff'd as supplemented,* 145 Ariz. 380, 701 P.2d 1188 (1985). Pursuant to A.R.S. § 31–412(B), we held:

> When an offender is paroled to the Department of Corrections or to another jurisdiction to begin serving a consecutive sentence, such parole time *must* run concurrently with the running of the subsequent sentence.

145 Ariz. at 388, 701 P.2d at 1196. (Emphasis added).

In a brief opinion adopting this court's holding, the Supreme Court supplemented our reasoning by invoking *State v. La-Barre,* 125 Ariz. 497, 610 P.2d 1058 (App. 1980). *See Cawley,* 145 Ariz. 380, 701 P.2d 1188. In *LaBarre* we had foreshadowed *Cawley* by ascribing to A.R.S. § 31–412(B) the legislative purpose of authorizing parole to the Department of Corrections so that a prisoner could commence serving a second, consecutive sentence while concurrently serving parole on his first. 125 Ariz. at 498–499, 610 P.2d at 1059–60.

After mandate was issued in *Cawley,* defendant sought post-conviction relief. His petition was amended by appointed counsel. Defendant argued that his conviction and sentence should be set aside be-cause his plea, founded upon the mistaken belief that he was validly on parole when he committed the robbery, was not knowingly, intelligently, or voluntarily made. Additionally, defendant contended, because his parole, recalculated in accordance with *Cawley,* had legally expired before the robbery, there was no factual basis for the plea or for enhanced punishment for a recidivist offender pursuant to A.R.S. § 13–604.01(B).

The state acknowledged *Cawley,* but maintained that it did not undercut the validity of the defendant's plea. Defendant was factually on parole, the state argued, even if his parole status resulted from the parole board's legal error, and the fact of parole, even a legally inappropriate parole, was sufficient to support the plea.

The trial court rejected the state's arguments and granted defendant's petition for post-conviction relief. It found that, because the court and the parties were not "apprised of the actual situation, namely, that the defendant was not on parole but for the Board of Pardons and Paroles' erroneous tolling of the parole …," defendant's plea was not entered knowingly, voluntarily, or intelligently. Stating that grounds would have existed pursuant to Rule 17.5, Arizona Rules of Criminal Procedure, "to permit the defendant to withdraw his plea to correct a manifest injustice," the trial court vacated the plea. The state moved unsuccessfully for rehearing and then filed this petition for review.

The granting or denying of a Rule 32 petition is discretionary with the trial court; we only reverse where that discretion is abused. *State v. Adamson,* 136 Ariz. 250, 265, 665 P.2d 972, 987, *cert. denied,* 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). In this case we find no abuse.

## ANALYSIS

■ We first consider the defendant's parole status when he committed the present crime. The state calls it pure speculation to suppose that, had the board correctly calculated defendant's sentence, the defendant would not have been on parole when he committed the robbery. Had the

board known that tolling parole time was improper, argues the state, it might not have paroled defendant at all. The speculation lies not in defendant's argument but in the state's. Defendant was paroled to his second sentence. This parole was an accomplished fact. After granting parole, the board, without lawful authority, tolled parole until defendant was released. The state does not dispute that the board lacked lawful authority to do so, nor that, when recalculated in accordance with *Cawley*, defendant's parole expired before he committed the present crime.[1] *See also Fox v. Arizona Board of Pardons and Paroles*, 149 Ariz. 172, 175, 717 P.2d 476, 479 (App. 1986), where the board conceded that, in light of *Cawley*, a first sentence had expired during the pendency of a second, consecutive sentence despite the board's order tolling parole on the first sentence pending completion of the second.

We affirm the trial court's finding that defendant was not properly on parole when he committed the armed robbery. We need not apply *Cawley* retroactively to reach this result. *Cawley*, foreshadowed in 1980 by *State v. LaBarre*, did not establish a new rule of law to be applied prospectively, but clarified the intent of a statute in effect since 1978. The administrative rule invalidated in *Cawley*, lacking statutory authority, was invalid from its inception, not from the date of the *Cawley* decision. *See State v. Thomas*, 131 Ariz. 547, 642 P.2d 892 (App.1982).[2]

The state next argues that the propriety of defendant's parole status made no difference: valid or invalid, it was nonetheless parole. The state analogizes to the crime of escape from custody, for which one can be prosecuted and convicted even if the custody resulted from a charge later dismissed or a conviction later set aside.

This analogy fails; it overlooks the distinction between parole status, which is merely a sentence enhancer, and escape, which is a separate crime.

Escape from confinement, like release from confinement, is a sentence enhancing status; just as being on release when one commits a crime exacerbates the sentence for that crime, so does being an escapee. A.R.S. § 13-604.02. Escape, however, unlike parole, probation, and other forms of release, is a crime in and of itself. A.R.S. §§ 13-2501 to -2504. The state, when seeking sentence enhancement, may prove release status by a preponderance of the evidence, and the defendant has no right to have a jury decide the question. *State v. Hurley*, 154 Ariz. 124, 741 P.2d 257 (1987). When, by contrast, the state seeks to employ escape as a sentence enhancer, it must prove every element of the crime of escape beyond a reasonable doubt and to a jury if the defendant asks for one. *State v. Powers*, 154 Ariz. 291, 742 P.2d 792 (1987).

The elements of the crime of escape distinguish it clearly from the status of being on parole. Conviction of the offense underlying custody is not an element of escape; it suffices that there be custody, whether arising from arrest, criminal charges, or conviction. *See generally* A.R.S. §§ 13-2501 to -2504. A culpable mental state, however, is an element of escape; the perpetrator must knowingly escape from custody. *Id.* Thus the actor's knowledge or belief that the circumstance of custody exists is significant to the crime. A.R.S. § 13-105(5)(b) (now A.R.S. § 13-105(6)(b)). A culpable mental state, by contrast, is irrelevant to the function of release status as a sentence enhancer. "[T]o find release status, the court need not evaluate conduct or mens rea involved in the prohibited

---

1. Among the exhibits submitted by defendant in support of his petition for post-conviction relief is a letter sent by the Office of the Attorney General to the Chairman of the Board of Pardons and Paroles and the Director of the D.O.C. upon the issuance of the Supreme Court's opinion in *Cawley*. The letter directs that the D.O.C. recalculate the time remaining on sentences of any inmates affected by *Cawley*.

2. We note that in *Fox v. Arizona Board of Pardons and Paroles,* the Board of Pardons and Paroles conceded the application of *Cawley* to a parole that began before the *Cawley* decision and mandate. 149 Ariz. at 175, 717 P.2d at 479.

transaction." *Powers*, 154 Ariz. at 293, 742 P.2d at 794; *Hurley*, 154 Ariz. at 130, 741 P.2d at 263. The operative aggravating factor is not the actor's culpable mental state but his legal status of release.

In the present case, though defendant may have believed himself to be a parolee when he committed the crime of armed robbery, his parole had legally expired. Having served an expired parole is not a sentence enhancing status, and there is nothing in the state's comparison to the law of escape to make it so.

The state additionally attempts analogy to the former crime of committing a felony while free on one's own recognizance (A.R.S. § 13–1580, renumbered as § 13–3970 and amended by Laws 1977, Ch. 142, § 153; repealed by Laws 1981, Ch. 165, § 2; see now A.R.S. § 13–604(M)). When the charge for which a defendant was released on his own recognizance was dismissed or set aside, the state argues, his release status remained a basis for conviction under §§ 13–1580 or –3970. The state incorrectly cites *State v. Cassius*, 110 Ariz. 485, 520 P.2d 1109 (1974), *cert. dismissed*, 420 U.S. 514, 95 S.Ct. 1345, 43 L.Ed.2d 362 (1975), to support this proposition. *State v. Cassius* does not so hold. Nor are we aware of any holding on this point. We need not decide the issue, however, because of the constitutional history of A.R.S. § 13–1580 and its successor. In 1974 the Supreme Court upheld § 13–1580 against challenge under the double jeopardy clause of the Fifth Amendment to the United States Constitution. *State v. Cassius, supra.* But in 1982 the Ninth Circuit Court of Appeals rejected the reasoning of *Cassius,* directed that the writ of habeas corpus be extended to Arizona prisoners convicted under A.R.S. § 13–3970, the successor to § 13–1580, and held prosecution under that statute violative of the double jeopardy clause. *Dixon v. Dupnik*, 688 F.2d 682 (9th Cir.1982). A.R.S. § 13–3970 was repealed by the Arizona legislature in 1981. Under current Arizona law, if one is released on bail or on his own recognizance when he commits a felony, his release is an occasion for sentence enhancement, not prosecution for a separate crime. A.R.S.

§ 13–604(M). In short, A.R.S. § 13–3970 is moribund and lends no strength to the state's position.

■ This case is determined not by analogy but by the concrete language of Rule 17.3, Arizona Rules of Criminal Procedure, and by our supreme court's holding in *State v. Chavez*, 130 Ariz. 438, 636 P.2d 1220 (1981). A plea, to be valid, must be knowingly, intelligently, and voluntarily entered by the defendant. Rule 17.3, Arizona Rules of Criminal Procedure. Where, as here, the parties are mistaken as to the existence of a material factor, the plea is neither knowingly nor intelligently made. *State v. Chavez*, 130 Ariz. 438, 636 P.2d 1220 (1981). In *Chavez*, the defendant agreed to plead guilty to forgery in Arizona with a stipulation that he serve the presumptive sentence in New Mexico concurrently with a sentence to result from a parole violation in that state. Unbeknownst to the parties and the trial court, defendant had not violated his New Mexico parole. The trial court accepted the plea and sentenced defendant. Defendant later appealed on the ground that he remained incarcerated in Arizona, a breach of the terms of his plea agreement. Although the supreme court did not agree that the plea agreement had been violated, it stated:

> In actuality, the promise made by the state and the guilty plea entered by the appellant were based upon a misapprehension of an essential fact: the existence, or rather the absence, of a New Mexico parole violation. In the language of contract law, which is employed here only by analogy, the parties suffered from a mutual mistake of a material fact. "Ordinarily a mutual mistake of a material fact or a failure of consideration of an essential part of the contract will justify rescission." [Citation omitted.]

*Chavez*, 130 Ariz. at 439, 636 P.2d at 1221. The court concluded that the parties' mistake as to the existence of the New Mexico parole violation was crucial to the plea agreement. It held:

> [T]hat if the parties to a plea bargain were mistaken as to the existence of a

material factor which caused them to enter the agreement, and this material factor is discovered *after* sentencing, the defendant can withdraw his guilty plea if such action is necessary to prevent manifest injustice.

130 Ariz. at 439, 636 P.2d at 1221 (emphasis in original).

 The principles articulated in *Chavez* control this case. Defendant was not validly on parole in June of 1983; his parole had expired as a matter of law, because the Department of Corrections and the Arizona Board of Pardons and Paroles lacked authority to toll his parole time. The parties and the trial court erroneously believed that defendant was on parole and subject to the enhancement provisions of former A.R.S. § 13–604.01. Here, as in *Chavez*, the parties and the trial court suffered from a common mistake of material fact. Here, as in *Chavez*, this mistake was crucial to the plea agreement. Defendant's plea was not knowingly or intelligently entered. The specter of enhancement directly impacted defendant's calculation of the acceptability of the plea bargain offered by the state. To preclude the defendant from withdrawing his plea and reevaluating his position on the basis of a knowing and intelligent assessment of his sentencing exposure would be manifest injustice, as the trial court correctly found. For the reasons stated, we uphold the trial court's exercise of discretion and deny relief.

BROOKS, P.J., and HAIRE, J., concur.